## GEO. D. HALE v. OSCAR BISCHOFF.

1. OFFICER—*Appointment—Beginning of Term.* Where a statute authorizes the appointment of an official, and declares the tenure of the office, and is silent on the point as to the beginning of the first appointee's term, the commencement of the official term begins to run from the date of the appointment.

2. CITY ASSESSOR—*Term Began When.* The office of city assessor of the city of Topeka, under the statute, and the first appointment made by the mayor and city council, on February 6, 1882, commenced to run from that date. Each succeeding term of two years followed each other in regular order, the one commencing where the other ended.

3. ——— *Appointment During Term.* Where the term of a city official is fixed at two years, and a person is appointed to the office for one year only, the appointment is valid for the full statutory period.

———— *Appointment to Fill Vacancy.* Where an appointment to an office is made during a vacancy for a full term, this is, in legal effect, an appointment to fill the vacancy only.

5. HOLDING OVER—*Officer de Facto.* An officer whose official term has expired but who remains in possession of the office, having full control thereof and exercising the functions of the same, is an officer *de facto,* and all of his acts, within the limits of his official power, are valid as respects the public and third persons.

## *Original Proceeding in Quo Warranto.*

AT a regular meeting on the 5th day of February, 1894, the mayor and council of the city of Topeka appointed Geo. D. Hale city assessor. He thereafter qualified. On February 6, 1893, the mayor and council had appointed Oscar Bischoff city assessor, who qualified, and entered at once upon the discharge of the duties of his office. This action was commenced in this court on the 3d of March, 1894, by *Hale* against *Bischoff,* to oust the latter from office. The city of Topeka is a city of the first class, having a population of over 30,000. The legislature of 1881 passed chapter 37, being an act entitled "An act to incorporate and regulate cities of the first class, and to repeal all prior acts relating thereto." This took effect March 6, 1881. Gen. Stat. of 1889, ¶¶ 545–678. Section 79 of the act reads:

"The mayor, by and ·with the consent of the council, may appoint a city treasurer, city attorney, city clerk, city marshal, city engineer, fire marshal, city assessor, street commissioner, market master, weighmaster, and inspector and weigher of grains, meats, flour, and other produce, policemen and detectives, and such other officers or servants as they may deem necessary for the best interests of the city. The term of any appointed officer shall be for a period of two years, and until his successor is appointed and qualified."

It appears that in February, 1881, before the passage of chapter 37, Laws of 1881, the mayor and council of the city of Topeka appointed F. C. Bowen as city assessor, and that he qualified and entered upon the discharge of the duties of the office; that the next year, and on February 6, 1882, the mayor and council appointed Albert Parker as city assessor,

who qualified and entered upon the duties of the office; that that on February 9, 1883, the mayor and council again appointed Albert Parker city assessor, but he resigned or refused to serve longer, and on February 28, 1883, the mayor and counsel appointed J. P. Syler city assessor for the year 1883; that Syler qualified and entered upon the discharge of the duties of the office; that on February 4, 1884, the mayor and council appointed J. Lee Knight city assessor, who qualified and entered upon the discharge of the duties of the office; that on February 2, 1885, the mayor and council again appointed J. Lee Knight city assessor, and he again qualified and entered upon the discharge of the duties of the office; that on February 7, 1887, the mayor and council again appointed J. Lee Knight city assessor, who qualified and entered upon the discharge of the duties of the office; that in February, 1889, the mayor and council appointed F. C. Bowen city assessor, who qualified and entered upon the discharge of the duties of the office; that on February, 2, 1891, the mayor and council again appointed F. C. Bowen city assessor, who qualified and entered upon the discharge of the duties of the office; that on February 6, 1893, as before stated, the mayor and council appointed Oscar Bischoff city assessor, who qualified and entered upon the discharge of the duties of the office; that no appointment for city assessor was made by the mayor and council in the years 1886, 1888, 1890, or 1892. Oscar Bishoff claims he holds the office of city assessor for two years, including 1894, under his appointment in February, 1893. The opinion herein was filed May 5, 1894.

*T. W. Harrison,* and *S. B. Bradford,* for plaintiff.
*Overmyer & Isenhart,* for defendant.

The opinion of the court was delivered by

HORTON, C. J.: Section 40, chapter 34, Laws of 1876, providing "for the assessment and collection of taxes," reads:

" The mayor and common council of all cities of the first and second class shall, at their first regular meeting in Feb-

ruary of each year, appoint an assessor, whose duties and powers shall be the same as prescribed by law for township assessors."

The act "to incorporate and regulate cities of the first class, and to repeal all prior acts relating thereto," which took effect March 6, 1881, authorized the mayor, by and with the consent of the city council, to appoint a city assessor for a period of two years, and until his successor was appointed and qualified. The pivotal question in this case is, when did the term of office of city assessor commence after March 6, 1881, as relates to the office in the city of Topeka? The contention of the plaintiff is, as § 40, chapter 34, Laws of 1876, provided the mayor and council of the city were to appoint the assessor at the first regular meeting in February of each year, that § 79 of the act of 1881 merely extended the term of office, but did not change the time when the term should begin. Whether this contention is correct or not we need not now decide. If § 79 merely extended the term of office, then the appointment of city assessor would occur in each even-numbered year. This would make the appointment of Hale as city assessor, on the 5th of February, 1894, valid, and entitle him to the possession of the office. Section 122 of chapter 37, Laws of 1881, reads:

"All acts and parts of acts heretofore enacted by the legislature of the territory or state of Kansas in conflict with this act are hereby repealed."

The act of 1881 is silent on the point as to the beginning of the first appointee's term. A term of office means "a fixed and definite period of time;" "the fixed period of time for which the office may be held." A period or term of two years designates consecutive terms of two years following each other in regular order, the one commencing where the other ends. When no time is fixed by the statute for the commencement of an official term, it begins to run from the date of the appointment.

1. Officer—appointment—beginning of term.

As the legislature did not fix the time when the official term of city assessor, under the act of 1881, was to

begin, the date of the commencement of the term was neces-
sarily left to be fixed by the appointing power. (*The State v.
Stonestreet,* 99 Mo. 361; *Attorney General v. Love,* 39 N. J.
Law, 476.) The first appointment made by the mayor and
city council, after the act of 1881 went into effect, was on
February 6, 1882. Therefore, if it be conceded that § 122
of the act of 1881 repeals § 40 of the act of 1876, requiring
the appointment of a city assessor in February, then the term
of office for city assessor began upon the day of the first ap-
pointment, and continued for two years from and after that

2. City assessor—
term began
when.

day. As the first appointment was on February
6, 1882, the term of office of city assessor com-
menced at that date, and continued for the period
of two years. Each term followed the other in regular or-
der, each one commencing where the other ended. This
would make the appointment of city assessor to occur in each
even-numbered year, and would also make the appointment
of Hale as city assessor on the 5th of February, 1894, valid,
and entitle him to the possession of the office.

Counsel for the defendant admit that the office of city as-
sessor, under the act of 1881, is a two-years term, but con-
tend that § 40 of the act of 1876 was repealed by § 79 of the
act of 1881; and further contend that, as the appointments of
city assessor, until 1887, were made for one year only, the
action of the appointing power was exercised in ignorance or
in defiance of the statute of 1881, and therefore signifies
nothing — does not fix the beginning of the term of office.

Assuming that § 40 of the act of 1876 was repealed, then,
after March 6, 1881, there was no statute in existence au-
thorizing the appointment of any city assessor, except the act
of 1881. Can it be urged that, because the mayor and city
council did not act in full compliance with the statute of 1881,
the appointment of a city assessor, on February 6, 1882, was
void? Not so. Yet the logic of this argument is, that un-
less they acted intelligently under the provisions of the act
of 1881, in making the first appointment after March 6,
1881, they acted without the authority of any statute. If

the appointment on February 6, 1882, was anything, it was the commencement of a new term. That term, by the statute, was for two years, not one year. The mayor and city council had the power to make an appointment. They acted. The appointment was regular, but by a mistake of law was for one year instead of two. But this limit of the legal period of the term did not change the statute or limit the term. The rule is, that where, by the correct construction of a city charter, the term of a city officer is fixed at two years, and a person is appointed to the office for one year only, the appointment is valid for the full statutory period. In such a case, the action of the appointing power in selecting another person to the office at the expiration of one year is a nullity. (*Stadler v. Detroit*, 13 Mich. 346.) In *The State v. Brady*, 42 Ohio St. 504, it was decided that

3. Appointment during term.

"where a city officer's term, as fixed by statute, is two years, but the common council has been accustomed to appoint the officer annually, a person appointed to the office is entitled to hold for two years, although, at the end of his first year, he unsuccessfully applied for a reëlection."

Section 81 of chapter 37, Laws of 1881, emphasizes the construction given by us to the statute, as to the uniformity of the duration of the official term of city assessor, for that section provides: "In case of any vacancy in any appointive office, the mayor, by and with the consent of the council, shall fill such vacancy for the unexpired term for which his predecessor was appointed." As it was the intent of the statute of 1881 to designate consecutive periods of two years following each other in regular order, the one beginning where the other ends, the persons appointed to the office in the odd-numbered years, although appointed for full terms, would hold only for the unexpired balance of the term. (Throop, Pub. Off., § 330; *The People v. Tyrrell*, 87 Cal. 475.) When an appointment is made during a vacancy for a full term, this is in legal effect an appointment to fill the vacancy only. Bischoff was appointed in an odd-num-

4. Appointment to fill vacancy.

bered year, and his appointment can only hold for the balance of the term which commenced in February, 1892, and until his successor was elected and qualified.  It appears from the evidence presented upon the trial, that not only was Hale legally appointed to fill the office of city assessor on the 5th of February, 1894, for a period of two years, but also, that on the 10th day of February he duly qualified by taking the oath of office, and filing and having his official bond approved as required by law; therefore he is entitled to the possession of the office at once.

It was suggested upon the trial by the attorneys for the plaintiff that Bischoff is not even a *de facto* officer.  We do not agree to this.  An officer whose official term

5. Holding over —officer de facto.

has expired, but who, nevertheless, remains in possession of the office, exercising the functions thereof, and having the same under his control, is an officer *de facto* within the rule that such an officer's actions are valid as respects the public and third persons.  (*McCahon v. Comm'rs of Leavenworth Co.*, 8 Kas. 437; Throop., Pub. Off., § 631.)  Bischoff may be regarded as the city assessor *de facto* of the city of Topeka until he is actually ousted from the possession of his office by the court, or voluntarily gives up the possession of the same to the plaintiff; and all his acts as such, within the limits of his official power, are valid so far as they involve the interest of third persons and the public.

A judgment of ouster will be entered.

All the Justices concurring.