The State of Kansas, *on the relation of John T. Little, Attorney General*, v. Lovell F. Wentworth.— Same v. T. J. Hayes.

Officers of Insane Asylum — *Term of Office.* Under § 3 of chapter 113, Laws of 1879, ( ¶ 6188, Gen. Stat. of 1889,) which provides that "each insane asylum shall have a superintendent, an assistant superintendent, steward, and matron, who shall be chosen by the board of trustees, and shall hold their office for the term of three years," no vacant, unexpired or fractional terms are recognized, and such officers, whenever appointed, are entitled to hold their respective offices for the period of three years from the date that the appointment of each takes effect.

*Original Proceedings in Quo Warranto.*

Two ACTIONS in *quo warranto* by *The State*, on the relation of *John T. Little*, attorney general — one against *Lovell F. Wentworth*, and the other against *T. J. Hayes*. Judgment for defendant in each case.

On April 1, 1879, Dr. A. H. Knapp was chosen by the board of directors as superintendent of the asylum for the insane at Osawatomie, under the act to organize and regulate the insane asylums of the state, being chapter 113, Laws of 1879, published in the General Statutes of 1889 as article 20 of chapter 99, relating to state institutions. The tenure of office of the superintendent is governed by § 3 of the act, (¶ 6188, Gen. Stat. of 1889,) which, so far as necessary to quote, reads as follows : "Each insane asylum shall have a superintendent, an assistant superintendent, steward, and matron, who shall be chosen by the board of trustees, and shall hold their office for the term of three years." On March 6, 1882, Doctor Knapp was again chosen by the board, for the term beginning April 1, 1882. No other appointment was made until February 6, 1892, when Dr. L. F. Wentworth, the defendant, was chosen, it being stated in the minutes of the board that his term of office was "to begin July 1, 1892, for the unexpired term ending June 30, 1894." On June 12, following, it appears from the minutes that Doctor Wentworth was again elected, his term of office to begin July 1, 1892, for the unexpired term of Dr. A. H. Knapp. On July 18, 1894, Dr. C. H. Wetmore was chosen by the board, and he was declared elected superintendent for three years. He immediately qualified and demanded possession of the office, but Doctor Wentworth refused to vacate the same, and this action is brought for the purpose of ousting

Doctor Wentworth and requiring him to turn over all books, papers, etc., belonging to the office, to Doctor Wetmore.

*John T. Little*, attorney general, *Madden Bros.*, *L. B. Kellogg*, and *J. G. Hutchison*, for plaintiff.

*Ben. S. Henderson*, *Edwin A. Austin*, and *H. L. Armstrong*, for defendants.

The opinion of the court was delivered by

MARTIN, C. J.: The petition alleges that Doctor Knapp vacated the office of superintendent by resignation on July 1, 1892, but this fact is not otherwise directly shown. It seems probable, however, that early in the year he signified his intention of retiring from the office on June 30, 1892, and that Doctor Wentworth was chosen to take the place when it should be so vacated. The state claims that Doctor Wentworth's term expired on April 1, 1894, being 15 years or five full terms after the first appointment of Doctor Knapp, and that Doctor Wetmore, who was chosen on July 18, 1894, and who on the same day qualified and demanded the office, is entitled to it until April 1, 1897. The defendant contends that, under said § 3 of the act for the organization and regulation of the asylums for the insane, and the terms of his appointment, he has the right to hold the office until July 1, 1895. A construction of said § 3 is necessary to an adjudication of the rights of the parties. It will be observed that this statute makes no provision whatever for the time of beginning or ending of a term, nor for a vacancy, nor for the filling of an unexpired term, nor for an appointment for less than three years. In these respects it differs materially in terms from most of our statutes regulating

the tenure of public officers.  On May 23, 1861, almost at the beginning of our state government, a statute was enacted regulating elections, being chapter 28, Laws of 1861.  Sections 39, 40 and 41 of this act read, respectively, as follows :

"SEC. 39.  All vacancies in any state or county office, and in the supreme court or district courts, unless otherwise provided for by law, shall be filled by appointment from the governor until the next general election after such vacancy occurs, when such vacancy shall be filled by election.

"SEC. 40.  The regular term of office of all state, district and county officers, of the justices of the supreme and judges of the district courts, shall commence on the second Monday of January next after the election.

"SEC. 41.  Any of the said officers that may be elected or appointed to fill vacancies may qualify and enter upon the duties of their office immediately thereafter, and, when elected, *they may hold the same during the unexpired term* for which they were elected, and until their successors are elected and qualified ; but, if appointed, they shall hold the same only until their successors are elected and qualified."

These sections were published as above in chapter 86 of the compilation of 1862.  Sections 39 and 41 were re-enacted literally as §§ 57 and 59, and § 40 somewhat altered as § 58, of chapter 36 of the General Statutes of 1868.  No change has been since made, and the sections appear, respectively, as ¶ ¶ 2718, 2719 and 2720 of the General Statutes of 1889.  In *Bond v. White*, 8 Kas. 333, which involved the right to the office of sheriff, said §§ 57 and 59 were declared constitutional, and we have no doubt of the correctness of that decision as applied to county officers.  Whether the sections intended to, or do, cover all cases of judicial vacancies provided for by § 11 of article 3 of the constitution, we need not now inquire, but they were

The State, *ex rel.*, v. Wentworth.

treated as valid, and as constituting rules of construction, in *Hagerty v. Arnold*, 13 Kas. 367, 381, *et. seq.; The State, ex rel., v. Mechem*, 31 id. 435, 436, and *The State, ex rel., v. Foster*, 36 id. 504. *Hale v. Bischoff*, 53 Kas. 301, was a contest for the office of assessor of a city of the first class, a place filled by appointment, it being expressly provided by the statute that, "in case of any vacancy in any appointive office, the mayor, by and with the consent of the council, shall fill such vacancy *for the unexpired term for which his predecessor was appointed.*" (Laws of 1881, ch. 37, § 81; Gen. Stat. of 1889, ¶ 635). The foregoing authorities are all cited by the state to aid us in the construction of a statute essentially differing from the statutes which were controlling in those cases, for, as we have already seen, the section under consideration does not recognize any such thing as vacant, unexpired or fractional term, nor the appointment of any person for a shorter term than three years.

*The State, ex rel., v. Thoman*, 10 Kas. 191, required an interpretation of §§ 5 and 13 of article 3 of the constitution, the former fixing the term of office of the district judges at four years, and the latter regulating their compensation, in connection with chapter 52, Laws of 1867, creating the sixth, seventh, eighth and ninth judicial districts. Under this statute, Goodin was elected judge of the seventh district in 1867. He was re-elected in 1871, although the statute of 1867 was silent upon the subject of the recurrence of the election for judges. In the five original districts created by the constitution, the judges were elected in 1860, 1864, and 1868, and the salaries having been raised, the question arose as to the validity of the election of 1871, and it was held that the constitution fixes the term at four years, and it was not in the

power of the legislature to increase or extend that term, either directly or indirectly, and the first election for judge being in 1867, the next was properly held in 1871. *Peters v. Board of State Canvassers*, 17 Kas. 365, followed the authority of the *Thoman Case*, holding that the judicial elections in the ninth district were properly held in 1867, 1871, and 1875, and this notwithstanding chapter 117, Laws of 1872, purporting to fix the time of the judicial elections in the new districts in 1872, and every four years thereafter, the act being inoperative and void, as in conflict with § 5 of article 3 of the constitution. The cases of *Odell v. Dodge*, 16 Kas. 446; *Comm'rs of Ottawa Co. v. Nelson*, 19 id. 243, and *Morgan v. Comm'rs of Pratt Co.*, 24 id. 71, are to the effect that in the organization of new counties the first or special election for officers is provisional only, and the offices are held temporarily until filled at the next general election. It is difficult to discover wherein these cases throw any light upon the construction of the statute now under consideration, and yet these are all the Kansas authorities cited by counsel for the state.

We cannot give this act the interpretation suggested on the part of the state, which would, in our opinion, violate rather than carry into effect the will of the legislature, as expressed in plain words. If this were allowable on any supposed ground of public policy as to the terms of these officers, yet we could not find any ground on which to base an argument that the public interest would be in any way promoted by the creation of fractional terms by judicial construction. We are aware of no reason that would forbid the appointment of officers for the Topeka and Osawatomie asylums at different times, nor that would require the choosing of the four officers of either institution at

the same time. The statement of facts shows that
the board of trustees has not kept the triennial terms
distinct nor uniform, even as to the Osawatomie asy-
lum. The circumstance that where the legislature
has seen fit to recognize vacant fractional terms it has
expressly provided for the filling of the places for the
unexpired terms, furnishes a strong reason for hold-
ing that where they have not done so it was intended
and deemed best that the officer, at whatever time ap-
pointed, should hold his office for the term prescribed
by the statute ; and that if he should vacate the place
before the expiration of that time this should not
shorten the term of the next incumbent. In other
words, when one goes into office by virtue of an ap-
pointment under this statute, he has a right to fill it
for the prescribed period, but if he quits, his term
ends, and a new one begins when the appointment of
his successor takes effect. And this doctrine is sus-
tained by the great weight of authority.· (Throop,
Pub. Off., §§ 319 and 320, and cases cited.) In *Peo-
ple, ex rel., v. Green*, 2 Wend. 266, 273, under a consti-
tutional provision that sheriffs should be chosen
"once in every three years, and as often as vacancies
shall happen," it was decided that a sheriff elected in
September, 1826, to supply a vacancy occasioned by
the death of his predecessor, who took his office Janu-
ary 1, 1826, would hold the office for three years. In
delivering the opinion of the court, Marcy, J., said :

"Green was elected, as I understand the provision,
to fill the vacant office, and not merely to serve out
the vacant term of his predecessor. I am inclined to
think that a diversity of opinion on this subject has
arisen from different applications of the term '*vacan-
cies*' in the section of the constitution which we are
now considering. It has been sometimes applied to
the office, as contradistinguished from the term of

service, and at others, to the term of office. I under-
stand it as applicable to the office alone. When Green
came into the office, he took it with all the rights, pow-
ers and incidents belonging to it, under any circum-
stances, one of which was a tenure of three years.''

See, also, *The People, ex rel., v. Coutant,* 11 Wend.
132; *Marshall v. Harwood,* 5 Md. 423–431; *Sansbury
v. Middleton,* 11 id. 296, 297; *Crowell v. Lambert,* 9
Minn. 283; *Whipper v. Reed,* 9 Rich. (S. C.) 5; *Mere-
dith, ex parte,* 33 Gratt. 119; *Keys v. Mason,* 3 Sneed,
(Tenn.) 6; *Brewer v. Davis,* 9 Humph. (Tenn.) 208–
213; *Banton v. Wilson,* 4 Tex. 400. The Virginia case
is very instructive, reviewing many of the authorities.
It should also be added that the case cited from 11
Wendell was afterward affirmed by the court of errors
(id. 511), Chancellor Walworth delivering the opin-
ion of the court.

The fact that the board made the appointment of
Doctor Wentworth ''for the unexpired term ending
June 30, 1894,'' is of no consequence, for under the
authority of *Hale v. Bischoff,* supra, he will hold until
July 1, 1895.

Judgment in favor of the defendant.

JOHNSTON, J.: I concur in the result.

The case of THE STATE, *ex rel.,* v. T. J. HAYES will
be disposed of in the same manner. He was appointed
steward for the same asylum February 6, 1892, but
the record does not show when his appointment was
to take effect. On July 18, 1894, W. H. Wilson was
appointed, but as the term of Hayes did not expire
until February 6, 1895, or at a latter date, (depending
upon the time when his appointment became effective,)
there was no vacancy at the time of the appointment
of Wilson, and judgment must be rendered in favor
of the defendant.

ALLEN, J. :  I am unable to reconcile the conclusion reached in this case with the prior decisions of this court.   It seems to me that no sound distinction can be drawn between the case presented by an appointment made at a time prior to the expiration of a regular three years' term and that of an election to the office of judge of the district court, either after a vacancy has been filled by appointment until the next general election, in accordance with the provisions of the constitution, or where an election is held on the happening of a vacancy.   The case cited from 33 Grattan, 119, is to the effect that an election of judge would be for the full term, and not merely for the unexpired term ;  but this court, in the cases of *The State, ex rel., v. Thoman*, 10 Kas. 191, and *Peters v. Board of State Canvassers*, 17 id. 365, cited in the opinion, adopted the other rule, and in the latter case held that the legislature could not even by statute provide for a change of the regular succession of terms of office, though a judge had held over his term of four years because of a failure to elect a successor. The cases mentioned applied the rule which had been declared in *The State, ex rel., v. Cobb*, 2 Kas. 32, with reference to the terms of office of the justices of this court to judges of the district court.   The constitution provides that a judge of the district court "shall hold his office for the term of four years."   The only provision for filling vacancies is to fill them until the next regular election.   The judge who is elected at that election would appear to have as strong a claim to hold for four years by virtue of the provisions of the constitution as the superintendent of the asylum can possibly have under the statute under consideration.   But this court held, in the cases

cited, that there was a regular succession of terms, and that the judge elected when there was an unexpired term to fill held only for the balance of his predecessor's term. The case of *Hagerty v. Arnold*, 13 Kas. 367, also cited in the opinion, as well as a number of cases since decided, applies the same rule to county officers. Some of the authorities from other states, cited in the opinion, hold the reverse under similar statutes. It can hardly be seriously contended that the legislature can change a rule established by the constitution, and the power to do so was very emphatically denied in the *Peters Case*. If the question were a new one in this state, perhaps the arguments in favor of the rule announced in this case might appear as weighty as those opposed to it. As applied to the particular officers whose terms are under consideration, I perceive no special objection to the conclusion reached. It does seem to me, however, that a well-defined and steadily-maintained rule for the construction of statutory and constitutional provisions with reference to the succession of terms of office is broken down by this decision, and that hereafter we shall be at sea without any reliable compass for our guidance in determining the tenure of a considerable class of public officials, and that it is far better to adhere steadily and consistently to the rule already adopted, especially in view of the fact that it has seemed to work satisfactorily in the past. In the case of *Hale v. Bischoff*, 53 Kas. 301, though not necessarily involved in the decision, the rule that terms of office follow each other in regular succession, in the absence of express provision to the contrary, was recognized as the settled law of this state. Some force is attributed to the want of any provision in the statute under consideration for filling vacancies. The

statute does not in express terms provide for any appointment but the first. The power to appoint after the expiration of the first term must be inferred. It seems to me that with equal ease we may infer the power to fill a vacancy.